Curia, pier
Nott, J.
At the death of Jacob Myers, the testator, David Myers, had three children, two sons and a daughter, now Mrs. Clendenin. He had several born afterwards. The question submitted to our consideration is, whether the children in ease at the time of the death of the testator are exclusively entitled to the property, or whether the after-born children are entitled to participate with them.
I concur in opinion with the chancellor, that in the construction of wills the intention must govern, and that the intention must be collected from all parts of the will taken together, and not from particular parts or expressions. And 1 am willing, in this case, to adopt the other part of the proposition, that we must judge of the intention from the will itself, without regard to extraneous circumstances; though I am inclined to think that there may be cases where we may look beyond the will for the meaning of the testator.
I also agree with the chancellor, that “the general rule upon this subject is, that where there is an indefinite period for distribution, the legacy vests at the death of the testator, and that none can take except those in esse at that time (a). But where there is a fixed period when the distribution is to take place, as when the legatee shall arrive at the age of twenty-one, then all the children born before that time will come in for a distributive share, and such as are subsequently born will be excluded.” But although I concur in the rule as thus laid down, and think that it contains the true principle *upon which this case must be decided, I do not think that it is well illustrated by the case put by the chancellor.
A, says the chancellor, gives his estate to B and C, the children of D, to be divided between them when they arrive at the age of twenty-one years. A dies, and D has six other children born before B and C arrive at that age. A and B (I presume it was intended to say B and C) do not take the whole estate at the death of the testator; but the other six children of D, born before the distribution is to take effect, will come in, and are entitled to a distributive share.
Now, with the utmost deference for the opinion of the chancellor, I should presume that B and C would take a vested legacy, although the time of payment was postponed until they arrived at the age of twenty-one, and that the after-born children would not be entitled to participate with them in the distribution. Where a legacy is given to chil *485 dren, generally, without the specification of any in particular, all who are in esse at the time of distribution may come in ; but where it is given to two or more individuals by name, the postponement of the time of payment, or of distribution, I should presume, would not affect their rights. After-born children, therefore, could have no claim on a legacy thus given, though born before the time of distribution. I am constrained, therefore, to withhold my assent from the case put by the chancellor, although I concur in the general principle which it seems intended to establish.
I also further agree, “ that where legacies are given to a class of individuals, payable at a future period, as to the children of B when the youngest shall attain twenty-one or to be divided among them at the death of C, any child who can entitle himself under the description at the time of distributing the fund, may claim a part of it, as well the children, living at the period of distribution,* though not born till after the testator’s death, as those born before, and living at the happening of the event.” But then the period of distribution must be fixed, or it must depend upon some contingency, and not be left indefinite. For when the period of distribution is indefinite, those living at the death of the testator alone can take, according to the rule first laid down by the chancellor. And that distinction will be found to run through all the cases. And in every case relied on by the chancellor it will be seen, that a time of distribution is expressly fixed by the testator, or some contingency, upon which the property is to go over, is expressly mentioned in the will, except the case of Hughton v. Price, said tobe decided by lord Redesdale, but as it does not appear from the decree where that case is to be found, (a) nor the principle decided, I am unable to determine how far it is applicable to the case now under consideration. In the case of Ellison v. Ai rey, the property was given over to the younger children of F. E. upon the death of C. P, before twenty-one, or marriage ; it was held that all who came within the description at the time the contingency happened, should take. 1 Ves. Sen. 111. In the case of Bartlett v. Hollister, 1 Bro. C. C. 530, the property was given to the testator’s daughter H. for life, with the remainder over to the children of his sister, upon the contingency of H.'s dying without issue. She did die without issue, and it was held that all the children of the sister, born before the termination of the life estate should take. So in the case of Congreve v. Congreve, 1 Bro C. C. 530, where property was given to all the children of A. at their respective ages of twenty-one, it ivas held that all were entitled who were born before that time, though after the death of the testator. So where property' is given *to a parent, or to other for life, with a limitation over, as in Wild’s case, 6 Coke 17, and the case of Stanley v. Baker, Moore’s Rep. 220, it vests in all the children in esse at the termination of the life estate, or the happening of the contingency', because that is the time they are to take, and not before. The same observations apply to the cases of the Attorney General v. Crispin, 1 Bro. C. C. 386, and Congreve v. Congreve, 1 Bro. C. C. 530. For in both of those cases there is a fixed period when the legacies shall vest. The case under consideration, therefore, does not come within the principle of any of the cases *486 relied on, because there is no time fixed for the distribution of the property, nor does it depend on any future contingency. The words of the will are, “I give and bequeath unto my dear and beloved grand-children,” without any qualification or limitation of time or circumstances. The legacy to his son, David Myers, is in the same words, and it will not be pretended that that did not vest at the death of the testator. The testator appoints his son, David Myers, “guardian of this valuable property,” and unless he had considered it the property of his grand-children, it would have been unnecessary to appoint a guardian to manage it for them. But he even goes farther, and “requests him to have them well educated out of the profits arising from this estate noiv bequeathed unto them.” It would seem, therefore, that from the very words of the will, the grand-children took an immediate and vested interest; for the possession of the guardian was the possession of his wards. And whatever latitude we may indulge in looking for the meaning or intention of a testator, where it is not expressed, we are not authorized to presume an intention contrary to his express declarations.
It is admitted that there is no time fixed for the distribution to take place. But two circumstances are relied on, one to show that the testator had some future period in contemplation, and the other to show when that period* was. The first relates to the negro girl given to Mrs. Dutilly during her life, and at her decease to go over with her increase if she had any, in the same manner as the other property. It is said that “it is obvious a considerable time must elapse before a negro girl of ten years old could have increase.” But the limitation over of the negro girl did not depend upon her having increase. She would have gone over at the' death of Mrs. Dutilly if it had happened the day after the death of the testator. It is a circumstance which goes rather to show that the other property had already vested, because at her decease it is to “ go in division with the other negroes as part of the bequest made unto his dear and beloved grand-children.” The property given to Mrs. Dutilly could not be distributed until her death, but that cannot affect the property given to the children. The bequests are not at all dependent on each other. The life estate of Mrs. Dutilly might terminate before either of the other legatees arrived at the age of twenty-one, or it might not happen for many years after. But let us suppose that the circumstances relied on by the chancellor go to show that the distribution was to take place at some future period, yet as the period is indefinite, the result will be the same, according to the first rule laid by the chancellor himself. The circumstance relied on to fix the period of distribution at twenty-one, is that sixteen years of age is the period at which a young man must enter college, and that it requires two years after the termination of his college life to acquire a profession. Now there is no law requiring a young man to enter college at sixteen, nor prohibiting him from entering at an earlier period. Neither is there any requiring him to finish his professional studies at twenty-one, nor even requiring him to study a profession at all. Both of those periods therefore are equally arbitrary and conjectural. I cannot authorize an-r su°h conclusion. If the *court may gratuitously adopt such a rule, the time of distribution can never be indefinite, because then if the testator fails to fix a period, the court may. I am *487 of opinion therefore that according to the legal construction of the will, the children in esse at the testator’s death are exclusively entitled to the property in question. And I think that all the authorities concur in that construction. Mr. Maddock lays down the rule, that “where a legacy is given to take effect at an indefinite period it will be considered as vested at the death of the testator.” And he adds, “the court will not conjecture against the general rule.” 2 Madd. Cha. 18.
In the case of Ellison v. Airey, 1 Ves. Sen. 111, Lord Hardwicke says, “ the court generally take it that there ought to be a legatee in being, and therefore will not construe a will to extend to persons not in being, unless the testator shows his intention to be such from his will.” In the case of Heathe v. Heathe, 2 Atk. 121, the testator gave a legacy among all the children of his sister Catharine Heathe, share and share alike. Lord Hardwicke held that it went to the children then in esse, and excluded an after-born daughter. That is a much stronger case than the one now under consideration, because the legacy was given to all the children of the testator’s sister. In the case of Horsly v. Chaloner, 2 Ves. Sen. 84, the testator gave a legacy to the younger child of his son William, or if more than one, then to such younger children, &c. to be paid at their respective ages of twenty-one. The master of the rolls said, “the not keeping demands of this sort open, had very properly induced the court to confine it to such children as were in being at the death of the testator, when the number is known and the portions they are entitled to and the time when they are to recover it.” He held, therefore, that it vested in those who were living at the testator’s death, although the time of distribution was ^postponed until their respective ages of twenty-one. In the case of Hutchiu v. Mannington, 1 Ves. Jun. 366, an eslate devised to be sold with all possible diligence or in a reasonable time, was considered as sold from the testator’s death, and that the legacy vested at that time. Lord Thurlow said there seemed to be some faint indications of an intention when the legacy should go over, and that it should not vest in the meantime, but that it was too uncertain to act upon. He agreed that the intention must prevail if it could be found out, but that he must have some rule to go by. In the case of Stapleton v. Palmer el. al. the rule is again recognized “ that a residue to be divided at an indefinite time vests at the death of the testator,” 4 Rro. C. C. 490; and so also when no time is mentioned, Hutchinson v. Manningham, in note. An exception to the rule is where there are no children in being at the time of the testator’s death. There it necessarily embraces after-born children, because there are none others to take. But even in those cases, those only can take who are born before the time of distribution, even though the will expressly mentions those hereafter to be born. Whitbread v. Lord St. John, 10 Ves. 152. Gilbert v. Boorman, 11 Ves. 238.
The case of Singleton v. Gilbert, 1 Cox’s Ca. 68, is so exactly like this, that it is difficult to discover a distinguishing feature between them. The testatrix gave the premises to all and every the child and children of her brother T. G., and to the heirs of their bodies. T. G. had two children at the time of the death of the testatrix, and one born afterwards. The lord chancellor said “this was *488 given direcly, and therefore he could not consider the child as entitled.” It is indeed a stronger case than the devises still livine was were sub-when the an estate after-born the one now under consideration, because ject to an annuity, and the annuitant *youngest child was born. See also Crane v. Odel, 1 Ball & Beat. Rep. 459; Freemantle v. Freemantle, 1 Cox’s Ca. 248; and Viner v. Francis, 1 Ball & Beat. Rep. 190. In the case of Ringrove v. Braham, 2 Cox’s Ca. 384, the testator had given to the children of A. B. fifty pounds to every child ho hath by his wife to be paid them as they shall come of age. There were eleven children at the date of the will, thirteen at the testator’s death, and three born after-wards. The thirteen children living at the testator’s death, were held entitled to the legacies, but not those afterwards born. And in the case of Burke and wife v. Wilder, 1 M’Cord’s Cha. Rep. 551, where the father had given the residue of his estate to his children born or to be born, this court held that he died intestate as to an after-born child. After such a host of authorities and many more which might be adduced, all tending the same way, it would seem impossible that a doubt should remain on the subject if wc are to be governed by authority. And although the rule may operate uneqally in some cases, it is one founded in experience, and, in all probability, as a general rule, is the best that can be adopted. It furnishes certain land marks to direct our course, and prevents that litigation which would necessarily arise in every case without some fixed and determinate rule. It is also conformable with the well settled rule of law, that where a parent directs his property to be equally divided among his own children, a posthumous child not particularly provided for cannot take. In the case of Viner v. Francis, 2 Cox’s Ca. 191, the master of the rolls puts the very case. “ Where a testator gives a fund to be divided among his own children, he shall be supposed to mean such children as are living at the time of his death.” If so, why shall not the same principle apply in other cases? Wc have indeed an act of our legislature now, which provides for a posthumous child. But until the passage of that *act the property vested in those only who -were born at the death of the testator. The gift being made yier verba in prxsenti could only vest in those who were then in esse, and not in those who might never exist.
That part of the chancellor’s decree, therefore, which directs the land to be equally divided among all the sons of David Myers, and the slaves among all the children, must, be reversed. The lands must be equally divided between the two sons, John Myers and William Myers, and the slaves and other personal property must be equally divided between the three legatees, John and William Myers, and Mrs. Clendenin.
With regard to the lot in Columbia, I concur in opinion with the chancellor; for although the testator uses the words “ all my landed estate,” the subsequent specifications clearly restrict their operation to the particular lands therein described. And although the bequest of one shilling to David Myers is expressed to be as “ full compensation and as his full share of all (testator’s) estate, both real and personal,” yet as this lot is not otherwise devised, it must descend to his son as his only heir at law. And this construction is aided by the *489 residuary clause which relates to the personal estate only. The decree of the chancellor in this respect is therefore affirmed.
The next point noticed in the chancellor's decree relates to the allowance claimed for the maintenance and education of the children. On that point the court concur with the chancellor, and the decree in that respect is also affirmed.
The next question is, whether the defendant is entitled to improvements made on the land. On that point also I concur in opinion with the chancellor. I think the defendant is entitled to remuneration for all such improvements as were necessary to preserve the property or to render it permanently more beneficial or valuable *lo the cestui que trust. But he is not entitled to remuneration for money uselessly expended in ideal or unsuccessful experiments, nor for any improvements beyond the actual amount of money expended, or the value of the labor employed.
Another question, however, of no little importance is, whether the property accumulated by David Myers, shall be considered as belonging to the trust estate, or whether lie shall be liable for the rents and profits of the land and the hire or labor of the slaves.
There can be no doubt but that David Myers, having been appointed the guardian of his children, and having- the management of their estate, must be considered as a trustee. And there, is no rule of equity better settled, than that a trustee shall not be permitted to employ the trust fund for his own benefit. All purchases, therefore, made with the funds of the trust estate will be considered for the benefit of the cestui que trust. That principal is exemplified in numerous cases where it has been held that executors, attorneys, and trustees, shall not purchase at their own sales, nor of their cestui que trusts, clients, &c. All persons acting in such representative capacities are considered in equity as trustees, and are governed by the same rules; and it is no answer on the part of the defendant, that he has so mixed up the two funds together, that he cannot distinguish one from the other. A person may sometimes by mixing the estate of another with his own, subject himself to the loss of both; for it is his own fault that they have not been kept separate. But it does not appear to me, that this is a case which will subject the defendant to the loss of all the property he has in possession, merely because he cannot show what part of it has been purchased with the proceeds of the trust estate. His refusing to account, however, furnishes a very good reason why the court should adopt the most rigid rule of calculation, which the law affords *in behalf of the cestui que trusts as a substitute for such omission. Compound interest has sometimes been allowed on that ground, and directed to be calculated on short rests. State of Connecticut v. Jackson, 2 Johns. Cha. Rep. 14, 16. Schieffelin v. Stewart et al., 2 Johns. Cha. Rep. 620. Raphael v. Bœhm, 11 Ves. 92. 13 Ves. 407, 590.
In this case if the property which has been acquired by the proceeds of the trust estate cannot be ascertained, perhaps the method adopted by the chancellor is the best, and probably the only method which can he resorted to to effect the object. I cannot, however, concur in the opinion expressed by the chancellor, that compound interest ought not in any case, nor under any circumstances to be allowed. There are many instances where compound interest *490 has been allowed, as will appear by the cases already referred to, and without which the greatest injustice would be done. That question was settled in this State, as early as the year 1796, in the case of Bowles et al. v. Drayton, 1 Desaus. Rep. 489, a case very similar in principle to the one now under consideration. The testator gave three thousand pounds to his daughter, to be paid on her marriage or when she should attain the age of twenty-one, and that the lawful interest of the said sum should be annually paid and applied for her use, behoof, maintenance and education. The interest being more than was necessary for those purposes, a balance remained for several years in the hands of the executors. The question was whether they should pay interest on the annual balances of interest so remaining unappropriated. Chancellor Rutledge, who delivered the opinion of the court said “that it was a matter resting in the discretion of the court, and that the interest would be allowed, or not, according to circumstaances.” And the decree was, that “the master should make a statement of the ac-counb* allowing interest on the yearly balance of interest, &c.;’ The only difference between the two cases is, that in one, the annual interest on the legacy is directed to be appropriated to the use of the cestui que trust, or legatee, and in the other, the annual income of the estate is appropriated to the same use. And in every case since, where the court has had occasion to lay down any general rule on the subject, the same principle has been recognized, and particularly in the case of Wright v. Wright, decided at our last sitting in this place, ante, page 185. For although compound interest was not allowed in that case, the principle laid down was distinctly noticed and recognized. In this case the defendant has received the rents and profits of the lands, and the profits arising from the labor of the negroes. These constituted an annual fund in his hands for the benefit of the cestui que trusts, and it is incumbent on him to shew that he has employed it for that purpose, or he must pay interest upon it. He will be allowed a deduction for improvements, the education of the children, and the maintenance, taxes, &c., of the young negroes. But I do not think that the allowance for the support of the young negroes ought to be carried up to the age of fourteen. A slave, I think, must certainly be able to maintain himself by his labor before he arrives at that age. That, however, will be a matter of reference to the commissioner to ascertain. After making an allowance for the just claims of the defendant, according to the principles above laid down, to be deducted annually as they arose, the defendant must pay interest on the balance remaining in his hands. In taking an account, however, of the income of the estate, a distinction must be made between the rents and profits of the land, and the labor of the negroes. The two sons are exclusively entitled to the rents and profits of the land; and *hire negroes must be divided among the three claimants.
With regard to the property given to Mrs. Clendenin, soon after her marriage, whether it was intended as an advancement of his daughter in mariage, or a payment of the legacy, is a qestion which has not been tried. The court, therefore, can express no opinion upon it. That part of the case must be referred back to the court of equity for a hearing.
It is therefore ordered, decreed, and adjudged, that the land in ques *491 tion be divided equally between John Myers and William Myers; and that the negroes, together with the increase of the females, he equally divided and distributed between the said John Myers, William Myers, and Mrs. Clendenin. It is also further ordered, that it be referred to the commissioner to inquire, whether there is any, and what property in the hands of David Myers, the defendant, which has been purchased with the funds of the trust estate, and to take an account of the rents and profits of the said land, and the hire and labor of the negroes; and that after making all proper deductions for the improvements on the land, the education of the children, and the expenses of raising and maintaining the young negroes, according-to the principles hereinbefore laid down, and all other necessary expenses and disbursements incurred for the benefit of the devisees and legatees, the amount due for the rents and profits of the land, with the interest on the annual balance thereof, be paid over in the manner directed for the division of the land, and that the balance due for the labor of the negroes, to be calculated in the same manner, be paid over, and distributed in the manner as directed with regard to the negroes.
And with regard to the property received by Mr. Clendenin, that the case be referred back to the court of equity to hear and determine, whether the same was *given to him in advancement of his wife in marriage, or in payment of the legacy due her under the will of her grand-father. And that the decree be reformed so as to correspond in all respects with the principles hereinbefore laid down, and that the costs he reserved until a final hearing of the cause.

Decree modified.

 See Taveau v. Executors of Ball, 1 M’Cords Cha. Rep. 7.

 See Hoghton v. Whitgrave, 1 Jac. & Walk. 146, which is probably the case referred to.